CAL–ALMOND, INC., Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant–Appellee.

No. 90–16343.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1991.

Decided March 30, 1992.

---

1. The defendants in such a case may then apply to this court for a discretionary stay. *See Apostol*, 870 F.2d at 1339.

Brian C. Leighton, Fresno, Cal., for plaintiff-appellant.

Kevin M. Simpson, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GOODWIN, NORRIS and THOMPSON, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Appellant Cal–Almond, Inc. challenges the U.S. Department of Agriculture's ("USDA") failure to provide it with a list of California almond growers eligible to vote in a referendum on the continuation of a marketing order. The questions presented

by Cal–Almond's appeal are whether § 630 of the Agricultural, Rural Development, and Related Agencies Appropriations Act of 1988 exempts this list from disclosure under the Freedom of Information Act ("FOIA"), whether USDA's withholding of the information violates the Constitution, and whether Cal–Almond is entitled to equitable relief.

## I

Cal–Almond is a handler of almonds and is subject to the marketing order that regulates handlers of almonds grown in California. 7 C.F.R. Part 981. The Secretary of Agriculture promulgated this marketing order in 1950 pursuant to the Agricultural Marketing Agreement Act of 1937 ("Act"). 7 U.S.C. § 608c. The Act provides that no marketing order will become effective unless it is approved by a two-thirds vote of the commodity's producers. *Id.* § 608c(8). The Act further provides that the Secretary shall terminate a marketing order whenever he finds that it does not tend to effectuate the policy of the Act or whenever he finds that termination is favored by a majority of the commodity's producers. *Id.* § 608c(16). In any referendum conducted pursuant to the Act, it is producers rather than handlers who are entitled to vote.

The almond marketing order does not provide for termination referenda under § 608c(16)(B) to be conducted on any regular basis. In 1989, the Secretary decided to hold a referendum on whether the marketing order should be continued or terminated. In his referendum order, the Secretary stated that he would consider terminating the order if less than two-thirds of the producers voting in the referendum favored continuance. 140 Fed.Reg. 30713 (1989). He also noted that § 608c(16)(B) would require him to terminate the order if a majority of producers favored termination. *Id.* at 30713–14.

Cal–Almond, which opposes the marketing order but, as a handler, was not entitled to vote in the referendum, decided to lobby producers to vote against the marketing order. Prior to the referendum, Cal–Almond filed a FOIA request for the names and addresses of all California almond growers eligible to vote. USDA denied the request on the ground that the information was "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). According to USDA, release of the voter list was prohibited by § 630 of the Agricultural, Rural Development, and Related Agencies Appropriations Act of 1988, which provides that "[n]one of the funds provided in this Act may be expended to release information acquired from any handler under the Agricultural Marketing Agreement Act of 1937." Pub.L. No. 100–460 § 630, 102 Stat. 2262 (1988). Cal–Almond offered to pay for a copy of the list or to copy the list using its own copy machine and a generator so that there would be no expense to the government, but USDA adhered to its position that release of the list was prohibited by § 630.

After exhausting its administrative remedies, Cal–Almond challenged the denial of its FOIA request in district court. On cross-motions for summary judgment, the district court upheld the denial of Cal–Almond's request on the ground that § 630 allowed the Department no discretion to disclose the information. Cal–Almond then filed an amended complaint restating its FOIA claims and alleging that denying it access to the voter lists violated its First Amendment and Equal Protection rights. The district court again granted summary judgment in favor of USDA and this appeal followed.

## II

First, we address Cal–Almond's claim that it was entitled to the list of Almond growers under the FOIA. "The mandate of the FOIA calls for broad disclosure of Government records." *CIA v. Sims*, 471 U.S. 159, 166, 105 S.Ct. 1881, 1886, 85 L.Ed.2d 173 (1985). Because public disclosure is not always in the public interest, information may be withheld under any of nine exemptions defined in 5 U.S.C. § 552(b). *Id.* However, "disclosure, not secrecy, is the dominant objective of the Act" and the exemptions "must be narrowly construed." *Department of the*

*Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). In this case, USDA relies on exemption 3, which permits the withholding of matters

> specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). Under exemption 3, the government must show that the statute on which it relies qualifies as an exempting statute and that the material being withheld falls within the exempting statute's coverage. *Sims*, 471 U.S. at 167, 105 S.Ct. at 1886.

■ In the instant case, we need not decide if § 630 is an exempting statute because, even if it is, the information withheld would not fall within the terms of § 630. Section 630 provides that "[n]one of the funds provided in this Act may be expended to release information acquired from any handler under the Agricultural Marketing Agreement Act of 1937." In opposition to USDA's motion for summary judgment and in support of its own motion for summary judgment, Cal-Almond produced letters from its attorney to USDA and an affidavit from its attorney indicating that Cal-Almond was willing to pay for copying the list of almond growers and was even willing to supply its own copy machine and generator if necessary. In response, USDA relied upon the affidavit of Clarence Steinberg, FOIA Officer of the Agricultural Marketing Service ("AMS"), which details the procedures for processing FOIA requests. However, these procedures apply regardless of whether a request for information is granted or denied. While Steinberg's affidavit indicates that appropriated funds would be spent processing Cal-Almond's request, it does not suggest that any appropriated funds will be expended *releasing* the list, which is all that § 630 prohibits.

USDA contends that releasing the almond grower lists to Cal-Almond would require the expenditure of funds even if Cal-Almond supplied its own copy machine because a USDA employee would have to spend time directing Cal-Almond to the list. This assertion was not supported by an affidavit or otherwise as required by Fed.R.Civ.P. 56, and, in any case, it is easily dismissed. We reject USDA's argument that Congress intended the question of the disclosure or non-disclosure of the list to turn on the nominal expenditure of government resources that may occur if a government employee pauses and gives directions to Cal-Almond with its copy machine in tow. Surely there are enough lawyers in Congress for us to assume its familiarity with the maxim "de minimis non curat lex."

In sum, if Congress intended to prohibit the release of the list under FOIA—as opposed to the expenditure of funds in releasing the list—it could easily have said so. "[O]nly explicit nondisclosure statutes ... will be sufficient to qualify under the exemption." *Church of Scientology v. U.S. Postal Service*, 633 F.2d 1327, 1329 (9th Cir.1980) (quoting *Irons & Sears v. Dann*, 606 F.2d 1215, 1220 (D.C.Cir.1979), *cert. denied*, 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980)). We hold that on cross motions for summary judgment, Cal-Almond supported its contention that no government funds would be expended in releasing the list of almond growers while USDA failed to proffer any meaningful evidence in support of its contention that government funds would be expended in releasing the grower list to Cal-Almond. Accordingly, Cal-Almond was entitled to summary judgment that § 630 does not exempt the list from disclosure under FOIA.

■ FOIA grants the district court jurisdiction only "to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, under FOIA, Cal-Almond is entitled only to an injunction ordering production of the names and addresses of almond growers that USDA still has. USDA no longer has the list of Blue Diamond growers be-

cause that list was provided to USDA on mailing labels and was used up in conducting the referendum. Absent a showing that the government has improperly destroyed "agency records," FOIA does not require these records to be recreated. *See Nolen v. Rumsfeld*, 535 F.2d 890, 891 (5th Cir.1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 555 (1977) (FOIA does not compel production of missing records).

## III

■ Cal–Almond also seeks an injunction requiring the Secretary to reconduct the referendum. Because Cal–Almond is not entitled to such relief under FOIA, *see* 5 U.S.C. § 552(a)(4)(B), we must address its argument that USDA's refusal to release the voter list in connection with the referendum violated the Constitution. We need not decide this constitutional question, however, because the Agricultural Marketing Agreement Act itself can reasonably be interpreted to require public access to the referendum's voter list. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). Because this rule of statutory construction should, of course, be used only to avoid "serious constitutional problems," we must first consider whether Cal–Almond's has raised a serious constitutional claim. *Id.*

■ Cal–Almond argues that there is a First Amendment right of access to voter lists. *See generally Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*). In considering claims of First Amendment access a court must look to two considerations: (1) whether historical experience counsels in favor of public access, and (2) whether public access would play a "significant positive role in the functioning of the particular process in question." *Id.* at 8, 106 S.Ct. at 2740; *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir.1989). It seems likely that a tradition of public access to voter lists exists. A review of state statutes reveals several that explicitly provide for access, *see, e.g.,* Haw.Rev.Stat. § 11–14(b); Idaho Code § 34–437(1); Mont.Code Ann. § 13–2–122; Nev.Rev.Stat. § 293–440(1); Or.Rev.Stat. § 247.945; Wash.Rev.Code § 29.07.151(2), and none that bar public access.[1] It also seems likely that public access to voter lists would play a significant positive role in the functioning of any referendum including this one.[2]

The government asserts that its interests in protecting the privacy of the almond growers and in conserving budgetary resources would overcome any possible First Amendment right of access. We need only consider whether these interests are so "overriding," *Press–Enterprise II*, 478 U.S. at 13–14, 106 S.Ct. at 2743, that we must summarily dismiss Cal–Almond's constitutional argument as plainly lacking in merit. Because in our view there is a substantial question whether the interests asserted by the government would override the right of access asserted by Cal–Almond, we conclude that Cal–Almond has raised a serious constitutional question. We are obliged to avoid this question since the Act may reasonably be interpreted to require public access to the list of voters when a refer-

1. The government cites the Maryland Code to the contrary. However, Maryland in fact permits the release of voter registration lists to "any person registered to vote in Maryland," although Maryland, like many other states, prohibits commercial use of such lists. Md.Elec. Code Ann. § 33–3–22.

2. The government's reliance on *Houchins v. KQED*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (plurality opinion), and *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164 (3d Cir.1986)

(en banc), is misplaced. Although, both cases recognize that there is no *general* right of access to government information, *Houchins*, 438 U.S. at 9, 98 S.Ct. at 2593; *Capital Cities Media*, 797 F.2d at 1173, the line of cases from *Richmond Newspapers* to *Press–Enterprise II* recognizes that there is a *limited* constitutional right to *some* government information. Neither *Houchins* nor *Capital Cities Media* involved the question of access to voter lists that is raised here.

endum on continuation of a marketing order is held.

In passing the Act, Congress delegated to growers the power to vote on whether marketing orders should be terminated. 7 U.S.C. § 608c(16)(B). Congress did not spell out the procedures by which such votes would be conducted, but surely implicit in the Act is the expectation that the Secretary would adopt procedures that are consistent with an open democratic process. Thus, it is reasonable to assume that Congress intended the lists of eligible voters to be a matter of public record. Indeed, we find it difficult to imagine that Congress would have delegated the exercise of substantial government power to a group whose members are unknown and who may therefore exercise that power anonymously. We therefore hold as a matter of statutory construction that the Act requires public access to the list of those eligible to vote in a referendum on continuation of a marketing order.

We express no opinion at this stage about whether Cal–Almond is entitled to an injunction requiring USDA to reconduct the referendum. We remand to the district court for consideration of the equities.

### IV

For the reasons stated herein, the district court's order granting summary judgment to USDA is REVERSED as is its order denying summary judgment to Cal–Almond. We REMAND to the district court with instructions to order the release of the names and addresses of almond growers that were eligible to vote in the referendum and that USDA still possesses. On remand, the district court shall consider whether USDA's violation of the Agricultural Marketing Agreement Act entitles Cal–Almond to an injunction ordering that the referendum be reconducted. The district court shall also consider whether Cal–Almond is entitled to attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E).

REVERSED and REMANDED.