**Lyman D. SPURLOCK, Plaintiff–Appellee,**

v.

**The FEDERAL BUREAU OF INVESTIGATION, Defendant–Appellant.**

**No. 94–55506.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 17, 1995.

Decided Nov. 7, 1995.

John P. Schnitker, United States Department of Justice, Washington, D.C., for defendant-appellant.

Kendrick L. Moxon, Bowles & Moxon, Los Angeles, California, for plaintiff-appellee.

Before: HUG, ALARCON, and LEAVY, Circuit Judges.

ALARCON, Circuit Judge:

The Federal Bureau of Investigation ("FBI") appeals from the portion of the district court's order requiring that the FBI produce certain documents pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in an action filed by Lyman D. Spurlock ("Spurlock") seeking "all FBI records concerning himself." The FBI contends that reversal is compelled because the district court erred in ordering the FBI to produce documents contained in its investigative files once it determined those documents were properly withheld from disclosure pursuant to FOIA exemptions. We affirm the portion of the order that holds that the documents at issue are exempt from disclosure pursuant to FOIA, and reverse the portion of the order requiring the FBI to disclose exempt information.

## I

On October 15, 1991, Spurlock filed a complaint for injunctive relief alleging that he had filed a request under FOIA for "all FBI records concerning himself," that the FBI failed to produce all documents in response to his request, and that he was entitled to an order directing production of these records. On March 24, 1992, the FBI filed a motion for summary judgment on the ground that

the disputed documents were each subject to one or more FOIA exemptions as detailed in its *Vaughn* Index.[1]

The *Vaughn* Index in this case consisted of the declaration of Special Agent J. Gary Boutwell, and the exhibits attached thereto, which specified in detail the nature of the information withheld, and the FBI's claims of exemption from disclosure under FOIA. Boutwell's declaration explained that the FBI had located four investigative files responsive to Spurlock's request: two were in its Los Angeles office, and two were located at the FBI headquarters in Washington, D.C. Two of the files (LA 72–271 & FBIHQ 72–3383) concerned an investigation resulting from allegations by a third party that Spurlock, along with other members of the Church of Scientology (COS), attempted to blackmail an individual working within the federal court system. The FBI investigated these allegations for possible obstruction of justice charges, and presented its findings to the Department of Justice. The Department of Justice ultimately declined to prosecute.

The second pair of files (LA 62–8822 & FBIHQ 63–1970) were opened as a result of a request for FBI assistance in identifying the Church of Spiritual Technology ("CST") from the Bureau of Land Management ("BLM") and a law enforcement agency, in connection with their investigation of a potential trespassing violation. After conducting an investigation, the FBI advised the BLM and the law enforcement agency that the CST was affiliated with the Church of Scientology.

Boutwell alleged that these files contained 379 unduplicated pages which referred to Spurlock. After careful review, the FBI released to Spurlock 183 pages in redacted form and 10 pages in their entirety. Copies of the redacted pages, along with a page-by-page explanation of both the redactions and any documents withheld in their entirety, were attached to Boutwell's declaration. Boutwell further alleged that the withheld information fell within one or more of the exemptions specified in 5 U.S.C. § 552(b)(2), (5), 7(C), 7(D), and 7(E) of FOIA.[2]

In his opposition to the FBI's motion for summary judgment, Spurlock argued that Joseph Yanny, a former COS counsel, informed the FBI that Spurlock and other COS members had attempted to influence

---

**1.** The term *"Vaughn* Index" originated from *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), wherein the court rejected an agency's conclusory affidavit stating that requested FOIA documents were subject to exemption. *Id.* at 828. "A *Vaughn* Index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1326 n. 1 (9th Cir.1995). This detailed affidavit " 'permit[s] the court system effectively and efficiently to evaluate the factual nature of disputed information.' " *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 149 n. 2, 110 S.Ct. 471, 474 n. 2, 107 L.Ed.2d 462 (1989) (quoting *Vaughn*, 484 F.2d at 826).

**2.** 5 U.S.C. § 552(b) provides, in pertinent part, that:

(b) This section does not apply to matters that are—

. . . . .

(2) related solely to the internal personnel rules and practices of an agency;

. . . . .

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

. . . . .

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law ...

5 U.S.C. §§ 552(b)(2), (5), (7)(C), (7)(D), and (7)(E) (1994).

the outcome of COS-related litigation through improper *ex parte* communications with a federal judge. Spurlock also theorized that Yanny was assisted in this effort by Vicki Aznaran, a former president of the Religious Technology Center, and her husband, Richard Aznaran. In support of this theory, Spurlock submitted, *inter alia*, portions of deposition and reporters' transcripts from other COS cases. Spurlock further argued that based on the FBI's "deep-rooted prejudice and animus ... against the Scientology religion and its churches," the FBI used its investigation of Yanny's "knowingly false allegations as to the Church and the [federal judge]" as a "pretext for harassment of the Church, and for gathering and spreading additional falsehoods." Spurlock also asserted, without supporting evidence, that the FBI continued to gather information improperly concerning the BLM inquiry about the Church of Spiritual Technology long after its "investigation" of the BLM matter was closed.

The FBI filed a reply, objecting to Spurlock's factual assertions on the ground that they were inadmissible as hearsay. In support of its exemption claims, the FBI also submitted a supplemental declaration executed by Boutwell.

At the pretrial conference on April 20, 1993, the district court partially granted the FBI's motion for summary judgment, authorizing the withholding of some of the records under FOIA Exemptions 2, 5, and 7(C), and denying the motion regarding other information ostensibly on the ground that a genuine issue of fact had been raised concerning whether FOIA Exemptions 7(D) and 7(E) were applicable. A bench trial was held to determine whether the remaining disputed documents were subject to FOIA Exemptions 7(D) and 7(E).

After the presentation of evidence was completed, the district court requested the parties to submit briefs setting forth their argument. Spurlock filed post-trial briefs, along with a listing of documents which he claimed remained at issue. The FBI also filed post-trial briefs objecting, *inter alia*, to some of Spurlock's factual submissions. Additionally, the FBI filed a notice of release with regard to page 84 of Defendant's Exhibit 100, explaining that, as a result of a clerical error, certain information had been redacted which should have been released. Finally, the FBI submitted the remaining documents at issue under FOIA Exemptions 7(D) and 7(E) to the district court under seal.

On June 8, 1993, the district court ordered the parties to discuss settlement of the remaining issues in the case in light of the ruling by the United States Supreme Court on the scope of Exemption 7(D) in *Department of Justice v. Landano*, — U.S. —, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).[3] The district court also directed the parties to file additional briefing discussing the applicability of *Landano* to the matter under submission should their settlement efforts prove unsuccessful. On August 9, 1993, the parties filed additional briefs. At that time, the FBI also filed a third declaration executed by Boutwell.

In his third declaration, Boutwell alleged that the FBI had reviewed all documents in which an Exemption 7(D) claim was still challenged by Spurlock in light of the standard set forth in *Landano*, and released portions of five additional pages. Boutwell also explained that Spurlock had provided a privacy waiver from Jeffrey S. Gordon, a COS attorney. As a result, the FBI no longer withheld Gordon's name and information provided by him under FOIA Exemption 7(C). Boutwell's affidavit set forth the justifications, under the post-*Landano* criteria, for withholding of the identities of, and information received from, "confidential sources" under FOIA Exemption 7(D).

On November 30, 1993, the district court issued an order directing that "[j]udgment pursuant to this order shall be entered in favor of defendant." After noting the documents which remained at issue, and stating that it had considered the submissions of the

3. In *Landano*, the Court held that "the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." — U.S. at —, 113 S.Ct. at 2024.

parties on the applicability of *Landano,* the district court held that "[a]ll the remaining documents are well within the exemptions claimed" by the FBI. The district court also stated, however, that

> the F.B.I. should be sensitive to the possibility that Mr. Yanny and the Aznarans may have falsified any information either in their public statements of what they may or may not have said to the F.B.I. The F.B.I., perhaps with the help of plaintiff of what Mr. Yanny or the Aznarans may have testified to in depositions or court hearings that may be [in] conflict with statements made to the F.B.I., in each of those cases defendant is to release so much of documents claimed to be protected and protested herein by exemptions to plaintiff for such use as plaintiff may require.

The FBI sought reconsideration or clarification of the above-quoted portion of the district court's order. At the hearing on the motion held on January 18, 1994, the district court stated:

> [The FBI] has an obligation, if these people have lied in their depositions, to come forward ... and let [Spurlock] know whether or not as a matter of fact ... [Yanny's or the Aznaran's statements in depositions or news reports] conflict with the statements they made to the FBI.... I am directing you to do that. *I suggested it to you, but since you want clarification, I will direct you to do it.*

(emphasis added).[4]

On January 31, 1994, the district court signed an order prepared by Spurlock's counsel styled as "Order Regarding Motion to Clarify Judgment." The order directed the FBI to meet with plaintiff's counsel "for the purpose of assisting the government to determine what information in the records at issue in this case may constitute evidence

that false statements were made by Joseph Yanny, Richard Aznaran and/or Vicki Aznaran, either to the FBI or in their sworn testimony or statements in other proceedings" and "to produce to plaintiff ... such falsified statements made by Yanny or the Aznarans." The order further stated:

> The Court finds that where the government possesses evidence that certain individuals have provided testimony or obstructed justice to the possible injury of another or others, it has an obligation to make such evidence known to the injured party or parties so that they may seek corrective action. The court further finds that it has both statutory and inherent power to order the relief herein. Moreover, it is in the interest of all for investigative files to reflect accurate information. "[I]t is well settled that where legal rights have been invaded and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)[.]

The FBI timely appealed from the order entered December 1, 1993, and from the order regarding the motion to clarify the judgment entered January 31, 1994.

## II

As a threshold matter, we must determine whether the FBI's appeal is properly before us. *See Professional Programs Group v. Department of Commerce,* 29 F.3d 1349, 1352 (9th Cir.1994) (an appellate court must consider *sua sponte* its proper jurisdiction). The FBI maintains that this court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.[5] The district court, however, failed to enter a separate judgment in this action. Rule 58 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[e]very

---

4. After the Assistant United States Attorney objected that "the only issue is whether the documents are properly withheld pursuant to the Freedom of Information Act," the district court responded: "This litigation ought to end, but, you know, my record in the Court of Appeals of the Ninth Circuit is not as good as in the Supreme Court. You can take whatever you want in that respect."

5. 28 U.S.C. § 1291 (1988) provides, in pertinent part, that:

> The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ...

judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided for in Rule 79(a)." [6]

In this case, there is no question regarding the finality of the district court's order. The district court disposed of the entire action by stating in its November 30, 1993 order that "[j]udgment pursuant to this order shall be entered in favor of defendant." Therefore, the absence of a Rule 58 judgment does not prohibit our review of this matter. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 382–88, 98 S.Ct. 1117, 1118–22, 55 L.Ed.2d 357 (1978) (if no question exists as to the finality of the district court's decision, the absence of a Rule 58 judgment will not prohibit appellate review). Accordingly, we have jurisdiction pursuant to 28 U.S.C. § 1291.

### III

We must decide whether the district court exceeded its jurisdiction in ordering the FBI to produce documents contained in its files notwithstanding its ruling that those documents were exempt from disclosure under FOIA. We review the existence and extent of a district court's subject matter jurisdiction *de novo.* *United States v. General Dynamics Corp.,* 61 F.3d 1402, 1406–07 (9th Cir.1995). Because the district court asserted that it had "statutory and inherent authority" to order the disclosure of exempt records and information, we examine each of these alleged grounds for jurisdiction in turn.

### A

It is undisputed that the sole statutory basis for Spurlock's claim is FOIA. The FBI contends that the district court was therefore limited to remedies set forth in FOIA. The FBI argues that once the district court determined that all the agency records at issue were exempt from disclosure under FOIA, the district court lacked jurisdiction to order further disclosure.

"Federal courts are courts of limited jurisdiction. They possess only that power autho-

rized by Constitution and statute, which is not to be expanded by judicial decree[.]" *Kokkonen v. Guardian Life Ins. Co. of America,* —— U.S. ——, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) (internal citations omitted). Congress enacted FOIA " 'to open agency action to the light of public scrutiny.' " *Department of the Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). The Act's "basic purpose reflect[s] 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' " *Id.* at 360–61, 96 S.Ct. at 1599 (quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)).

FOIA thus confers jurisdiction on a district court to prevent an agency from withholding records, unless the information sought falls within one of the nine exemptions enumerated in 552(b). The Supreme Court has explained that "federal jurisdiction [to order disclosure] is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.' " *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Department of Justice v. Tax Analysts,* 492 U.S. 136, 142, 109 S.Ct. 2841, 2846–47, 106 L.Ed.2d 112 (1989).

Thus, if agency records do not fall within one of the nine exemptions, they have been " 'improperly withheld' " and must be disclosed. On the other hand, "[i]f an agency refuses to disclose agency records that indisputably fall within one of the subsection (b) exemptions, the agency has 'withheld' the records, albeit not 'improperly' given the legislative authorization to do so." *Id.* at 153 n. 13, 109 S.Ct. at 2852 n. 13. *Accord FBI v. Abramson,* 456 U.S. 615, 631, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982) ("Once it is established that [disclosure of] information . . . would lead to one of the listed harms, the information is exempt. Congress thus creat-

---

**6.** Rule 79 of the Federal Rules of Civil Procedure is entitled "Books and Records Kept by the Clerk and Entries Therein." Rule 79(a) governs civil docket entries.

ed a scheme of categorical exclusion; it did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis.").

Here, the district court partially granted the FBI's motion for summary judgment on April 20, 1993, authorizing the withholding of certain information pursuant to FOIA Exemptions 2, 5, and 7(C). On November 30, 1993, the district court held that "[a]ll the remaining documents are well within the exemptions claimed" by the FBI. Having concluded that all of the documents were exempt from disclosure under FOIA, the district court lacked statutory authority to order disclosure.[7] Nevertheless, the district court purported to create an exception to the exemptions set forth in FOIA by ordering the FBI "to meet and communicate with plaintiff's counsel" concerning alleged FBI sources, to evaluate whether such alleged sources told the truth "either to the FBI or in their sworn testimony or statements in other proceedings," and to disclose to Spurlock any documents "which evidence such falsified statements" by the alleged FBI sources. Requiring an agency to disclose exempt information is not authorized by FOIA. Accordingly, we conclude the district court lacked statutory authority under FOIA to order the FBI to disclose exempt information.

### B

■ The FBI next contends that the district court lacked "inherent" authority to order disclosure of privileged executive branch material. We agree. A district court possesses inherent power over the administration of its business. It has inherent authority to regulate the conduct of attorneys who appear before it, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991), to promulgate and enforce rules for the management of litigation,

*Thomas v. Arn*, 474 U.S. 140, 146, 106 S.Ct. 466, 470, 88 L.Ed.2d 435 (1985), to punish contempt, *Young v. United States*, 481 U.S. 787, 793, 107 S.Ct. 2124, 2130, 95 L.Ed.2d 740 (1987), and to remand cases involving pendent claims. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988). A federal court's inherent authority to manage its docket and maintain proper decorum does not authorize it to carve out exceptions to the FOIA remedies expressly provided by Congress.

Spurlock argues that the Constitution and case law justify the district court's notion that it may disregard statutory limitations on its authority to disclose governmental records. Spurlock's contentions do not withstand logical analysis.

Spurlock first suggests that his right to the disclosure of false allegations about himself and his Church is "grounded in the due process clause of the Fifth Amendment, as well as in the First Amendment's protections of freedom of religion and association." It is unclear whether Spurlock relies upon the First and Fifth Amendments as the underpinning for a federal court's inherent powers, or whether he believes the Constitution provides an independent basis for affirmance. An examination of the legal definition of the term "inherent powers" readily refutes Spurlock's claim that the Constitution supports the district court's disclosure order. "Inherent powers" are defined in Black's Law Dictionary as "powers over and beyond those explicitly granted in the Constitution or reasonably to be implied from express grants[.]" Black's Law Dictionary 782 (6th ed. 1990). The plain meaning of the term "inherent powers" precludes reliance on the Constitution to authorize the disclosure of information explicitly exempted from revelation by FOIA.

---

7. We are mindful that section 552(b) provides as follows:

 Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

 Accordingly, a district court may retain jurisdiction to order disclosure of non-exempt, segrega-

ble portions of otherwise exempt documents. *See Wiener v. F.B.I.*, 943 F.2d 972, 988 (9th Cir.1991), *cert. denied*, 505 U.S. 1212, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992). In the matter *sub judice*, the district court's order clearly requires disclosure of exempt information, not merely disclosure of non-exempt segregable portions of the documents.

Spurlock appears to argue that the record contains sufficient facts to demonstrate a violation of the First and Fifth Amendments. Spurlock failed to present this argument to the district court. As a general rule, we will not consider an argument raised for the first time on appeal. *Westlands Water Dist. v. Firebaugh Canal,* 10 F.3d 667, 673 (9th Cir.1993). Exceptions to this rule exist when there is an exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, when a new issue arises because of a change in the law while an appeal is pending, or when the issue is purely one of law, because the necessary facts have been fully developed. *Romain v. Shear,* 799 F.2d 1416, 1419 (9th Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987). Spurlock has failed to demonstrate that any of these exceptions is applicable in this matter. Accordingly, we decline to consider whether a district court may require disclosure of information under the First and Fifth Amendments where the complaint refers solely to the remedies available under FOIA.

Spurlock next claims that *Cal–Almond, Inc. v. Department of Agriculture,* 960 F.2d 105 (9th Cir.1992) provides "alternative constitutional authority for disclosure of government records in the context of FOIA cases." This contention is without merit. In *Cal–Almond,* the plaintiff challenged the Department of Agriculture's failure to provide it with a list of California almond growers eligible to vote in a referendum on the continuation of a marketing order, claiming a violation of FOIA, the First Amendment, and its Equal Protection Rights. *Id.* at 107. We concluded in *Cal–Almond* that the list of almond growers still in the USDA's possession was not subject to a FOIA exemption. *Id.* at 108–109. We also commented that, although there was a "substantial question" whether an almond handler would have a constitutional right of access to lists of almond growers, we need not decide that question because the Agricultural Marketing Agreement Act provided a right of access to lists in question. *Id.* at 109–110. Because FOIA provides a right to disclosure if the information is not exempt, we need not spec-ulate whether a properly pleaded claim under the First and Fifth Amendments would support a remedy expressly precluded by Congress in FOIA.

Spurlock also urges us to conclude that the remedy of disclosure of exempt information is authorized by the comment in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) that "federal courts may use any available remedy to make good the wrong done." *Id.* at 684, 66 S.Ct. at 777. Spurlock's reliance upon *Bell* is misplaced. The Supreme Court has made it clear that *Bell* is simply one of a "long line of cases in which the Court has held that if a right of action exists to enforce a federal right *and Congress is silent on the question of remedies,* a federal court may order any appropriate relief." *Franklin v. Gwinnett County Pub. Schools,* 503 U.S. 60, 68–69, 112 S.Ct. 1028, 1034, 117 L.Ed.2d 208 (1992) (emphasis added). Conversely, " '[where] a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' " *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985) (citations omitted). Congress provided a comprehensive scheme under FOIA specifying when governmental disclosure is required. *See* 5 U.S.C. § 552(a)(4)(B), (b). The Supreme Court has held this scheme to be "explicitly exclusive." *Tax Analysts,* 492 U.S. at 151, 109 S.Ct. at 2851. Because Congress has provided specific statutory remedies in the case of a FOIA violation, the Court's observation in *Bell* is inapplicable.

Spurlock finally contends that *Menard v. Saxbe,* 498 F.2d 1017 (D.C.Cir.1974) and *Tarlton v. Saxbe,* 507 F.2d 1116 (D.C.Cir. 1974) support the district court's order. Spurlock's reliance upon these cases is misplaced. In *Menard,* a college student sought expungement of his arrest record contained in the FBI's identification files. The record itself noted that plaintiff was not "connect[ed] with any felony or misdemeanor" at the time of his arrest. 498 F.2d at 1019. Basing its decision upon 28 U.S.C. § 534, which authorizes the Attorney General to acquire, preserve, and exchange identification records with other law enforcement au-

thorities, the court held that Menard's suit against the FBI was proper because section 534 "precludes the Identification Division from maintaining in its criminal files as an arrest record an encounter with the police that has been established not to constitute an arrest." *Id.* at 1030. In *Tarlton,* a prisoner sought to expunge several entries in his FBI Identification file because the entries contained incomplete and inaccurate information. 507 F.2d at 1120. The court, relying upon *Menard,* held that Tarlton had stated a cause of action under section 534 and remanded the case for the district court to evaluate whether the FBI had responsibility to inquire into the accuracy of its identification records. *Id.* at 1126, 1131.

*Menard* and *Tarlton* did not involve the *disclosure* of information under FOIA. Instead, these cases concerned the *expungement* of FBI identification records under 28 U.S.C. § 534. The instant matter, by contrast, concerns the *disclosure* of the investigatory files of the FBI under FOIA. There is a clear distinction between the *deletion* of a criminal identification record under section 534 and the *release* of confidential information under FOIA. The expungement cases cited by Spurlock do not justify the disclosure of documents specifically exempted by FOIA.

The district court did not possess statutory or inherent authority to order disclosure of documents properly withheld pursuant to FOIA exemptions. Accordingly, we must reverse the portion of the district court's order requiring the FBI to disclose exempt information.

### IV

Spurlock finally argues that the portion of the district court's order upholding the FBI's exemption claims should be reversed. In support of this contention, Spurlock asserts that the FBI's *Vaughn* Index did not satisfy the FBI's burden to establish that the records were subject to various exemptions, that any claims of confidentiality pursuant to Exemptions 7(C) and 7(D) have subsequently been waived, and that the district court failed to make specific factual and legal findings to

allow a substantive review of each exemption claim.

 We decline to address these questions. An appellee who fails to file a cross-appeal cannot attack a judgment with a view towards enlarging his own rights. *Turpen v. City of Corvallis,* 26 F.3d 978, 980 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 426, 130 L.Ed.2d 339 (1994). Spurlock failed to file a cross-appeal from the portion of the district court's order concluding that "[a]ll the remaining documents are well within the exemptions claimed by the FBI." Accordingly, we refuse to consider the merits of Spurlock's claim that the district court's exemption findings were erroneous.

The portion of the order holding that the information requested by Spurlock is exempt from disclosure is AFFIRMED. The portion of the order compelling the FBI to release exempt documents to Spurlock is REVERSED. The district court is directed to enter a new order denying Spurlock's claim for disclosure pursuant to FOIA.