Rodney R. STARKEY and Almeda L. Starkey, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF INTERIOR;  Bureau of Indian Affairs, Defendants.

No. 01–CV–1458 JM(JFS).

United States District Court, S.D. California.

Nov. 15, 2002.

William N. Pabarcus, La Jolla, CA, for plaintiffs.

Beth Levine, Assist. U.S. Atty., San Diego, CA, for defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; ORDER UNSEALING DOCUMENTS

MILLER, District Judge.

Defendants United States Department of Interior ("DOI") and the Bureau of Indian Affairs ("BIA") move to dismiss Plaintiffs' Freedom of Information Act ("FOIA") complaint or, alternatively, move for summary judgment. Plaintiffs Rodney and Almeda Starkey oppose the motion. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the motion for summary judgment is granted in part and denied in part. The court also orders that the documents placed under seal pursuant to this court's October 25, 2002 order be unsealed.

## BACKGROUND

Plaintiff Rodney Starkey is the owner of ranch property located near the town of Boulevard, California, approximately 60 miles east of San Diego. The property is adjacent to property held in trust for the benefit of the La Posta Band of Mission Indians ("La Posta"). The BIA manages the La Posta property which is hereinafter referred to as the "trust" property. In order to obtain access to Plaintiffs' property, Mr. Starkey obtained an easement across property then known as the Spencer property and subsequently purchased by La Posta (the "fee" property). The easement constitutes the sole ingress and egress to the Starkey property.

Prior to 2000, several sand mining operations were conducted on both the trust and fee properties. In 2000, Plaintiffs learned that a new and expanded mining operation would be conducted on the trust property using the fee property as access to the trust property. There are currently no mining operations being conducted on the La Posta property because the last operator, Four Eagle, LLP, terminated its operations and filed for bankruptcy in December 2001. Plaintiffs are concerned about two proposed actions pending before the BIA: an expansion of the sand mining operation and an application by La Posta to transfer the fee property into trust.

Plaintiffs made several requests to Defendants for information pursuant to the Freedom of Information Act ("FOIA"). Defendants released numerous documents but have withheld some documents in their entirety and redacted others. Defendants claim that their actions are supported by appropriate FOIA· exemptions. Plaintiffs filed the present action to compel production of documents related to their several FOIA requests.

## DISCUSSION

### Legal Standards

*Summary Judgment Standards*

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

The court must examine the evidence in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On

a motion for summary judgment, when "'the *moving party* bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" *Houghton v. South,* 965 F.2d 1532, 1536 (9th Cir.1992) (emphasis in original) (quoting *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264–65 (5th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992)).

*FOIA Standards*

The basic purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). To that end, the district court has "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 522(a)(4)(B). Under this provision, federal jurisdiction is dependent "upon a showing that an agency has (1) improperly; (2) withheld; (3) agency records." *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980); *Spurlock v. FBI,* 69 F.3d 1010, 1016 (9th Cir.1995).

While FOIA is known as a disclosure statute, Congress recognized that there are legitimate governmental and private interests which could be harmed by release of certain information. *See FBI v. Abramson,* 456 U.S. 615, 630–31, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982). FOIA expressly recognizes "that public disclosure is not always in the public interest and consequently provides that agency records may be withheld from disclosure under any one of the nine exemptions defined in 5 U.S.C. § 552(b)." *Baldrige v. Shapiro,*

455 U.S. 345, 352, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982). There are certain "types of information that the Executive Branch must have the option to keep confidential...." *Dep't of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

To resolve issues regarding the adequacy of the disclosure, summary judgment is generally the appropriate procedural vehicle because "the law, rather than the facts, is the only matter in dispute." *Raytheon Aircraft Co. v. United States Army Corps of Eng'rs,* 183 F.Supp.2d 1280, 1281 (D. Kan 2001).

**The Motion**

■ Defendants move for summary judgment on grounds that the disputed documents are each subject to one or more FOIA exemptions as detailed in the so-called *Vaughn* Index. As explained by the Ninth Circuit,

the term '*Vaughn* Index' originated from *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), wherein the court rejected an agency's conclusory affidavit stating that requested FOIA documents were subject to exemption. *Id.* at 823. 'A *Vaughn* Index must (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption.' *Citizens Comm's on Human Rights v. FDA,* 45 F.3d 1325, 1326 n. 1 (9th Cir.1995). This detailed affidavit 'permit[s] the court system effectively and efficiently to evaluate the factual nature of disputed information.' (citations omitted)

*Spurlock,* 69 F.3d at 1012 n. 1. Summary judgment in an agency's favor is proper when the *Vaughn* Index and declarations are clear, specific, and reasonably detailed,

the information is not contradicted, and there is no evidence of agency bad faith. *See e.g., Matter of Wade,* 969 F.2d 241, 246 (7th Cir.1992) ("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned."); *Lewis v. IRS,* 823 F.2d 375, 378 (9th Cir. 1987) ("If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, 'the district court need look no further.' "). Each claimed exemption is discussed below.

*Exemption (b)(3)*

■ Exemption (b)(3) prevents disclosure of matters that are—

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld'

5 U.S.C. § 552(b)(3). Thus, exemption (b)(3) incorporates the disclosure prohibitions contained in other federal statutes.

The applicable statute referenced by Defendants is the Archeological Resources Protection Act of 1979 ("ARPA"), 16 U.S.C. § 470aa, *et seq.* The applicable provision of ARPA provides, in pertinent part:

(a) Disclosure of information

Information concerning the nature and location of any archeological resource for which the excavation or removal requires a permit or other permission under this chapter or under any other provision of Federal law may not be made available to the public under subchapter II of chapter 5 of Title 5 [FOIA] or under any other provision of law unless the Federal land manager concerned determines that such disclosure would—

(1) further the purposes of this chapter of the Act of June 27, 1960 (16 U.S.C. §§ 469–469c), and

(2) not create a risk of harm to such resources or to the site at which such resources are located.

16 U.S.C. § 470hh.

Plaintiffs challenge the applicability of ARPA for several reasons. First, Plaintiffs contend that the ARPA statutory scheme fails to provide sufficient guidance to an agency to determine whether disclosure is required. Plaintiffs rely upon *CNA Financial Corp. v. Donovan,* 830 F.2d 1132 (D.C.Cir.1987) for the proposition that the statute preventing disclosure must incorporate a "formula" to determine the precise scope of nondisclosure. In *CNA Financial,* the court held that the language contained within the Trade Secrets Act failed to "specify 'particular types of matters' for purposes of satisfying Subsection (B) of Exemption 3." *Id.* at 1141. The court found the language of the Trade Secrets Act "prohibiting only unauthorized disclosures" was so overbroad as to leave "at least some agencies in a position to opt out of its strictures." *Id.* at 1139. Here, unlike the Trade Secrets Act, the court concludes that ARPA complies with 5 U.S.C. § 522(b)(3)(B) because it defines particular criteria for matters to be withheld from disclosure. Specifically, ARPA provides that "[i]nformation concerning the nature and location of any archaeological resource for which the excavation or removal requires a permit or other permission under this chapter or under any other provision of Federal law may not be made available to the public under" FOIA. 16 U.S.C. § 470hh(a). An "archaeological resource" is defined as "any material remains of past human life or activities which are of archaeological interest" and which

are "at least 100 years old." 16 U.S.C. § 470bb(1). This statutory scheme is sufficiently particular to limit the BIA's discretion and to ensure that the agency engage in a deliberative process to meet its disclosure obligations.

■ Next, Plaintiffs contend that ARPA does not apply to the fee property. Plaintiffs contend that the Grant Deed references no restriction against alienation and therefore Defendants wrongfully withheld documents related to the fee property. (Almeda Starkey Decl. Exh. 11). While ARPA specifically encompasses the trust property, the court concludes that it also applies to the fee property because it is "subject to a restriction against alienation imposed by the United States." 16 U.S.C. § 470bb(4). Title 25, Code of Federal Regulations, Section 152.22(b) provides in pertinent part: "[A]ny other land owned by an Indian tribe may only be conveyed where specific statutory authority exists and then only with the approval of the Secretary unless the Act of Congress authorizing sale provides that approval is unnecessary." Because the fee property is alienable only with the approval of the Secretary, the fee property falls within the scope of "Indian lands," as defined in 16 U.S.C. § 470bb.

Plaintiffs also argue that Defendants fail to establish that the "archaeological resources" sought to be protected meet the precondition of being at least 100 years of age. See 16 U.S.C. § 470bb(1). Plaintiffs contend that Mr. Townsend and Ms. Dutschke are not qualified as experts to render an opinion concerning the archaeological resources. Both Mr. Townsend and Ms. Dutschke declare that "[a]ll of the withheld information relates to archeological resources that are 100 years old. In fact, they are prehistoric." (Townsend Decl. ¶ 8; Dutschke ¶ 8). Mr. Townsend, a 24–year employee with the BIA, is the Federal Land Manger for La Posta reservation and Ms. Dutschke is the Deputy Regional Director for the BIA. While the challenged declarations provide minimal information about their qualifications as experts on the subject of archaeological resources, Defendants also submit the declaration of Harold Daniel Hall, the Regional Archeologist for the BIA. Mr. Hall sets forth his education and substantial experience and expertise. (Hall Decl. ¶ 1). Based upon his qualifications, Mr. Hall's uncontradicted opinion is that the archaeological resources are at least 100 years old. (Hall Decl. ¶ 2). Accordingly, Defendants have demonstrated that the archaeological resources are at least 100 years old and fall within the scope of ARPA.

■ Finally, Plaintiffs assert that some of the information sought to be protected is already in the public domain and therefore is not confidential and subject to non-disclosure. In support of this argument, Plaintiffs identify several public records, including one available at the San Diego County Department of Planning and Land Use entitled "An Archaeological Reconnaissance of the 121–Acre S & W Sand And Materials Project And The Evaluation Of Prehistoric Sites W–3463 Through W–3468." (Almeda Starkey Decl. Exhs. 2, 18). The report identifies several archeological resource sites on the property. To the extent that the above identified documents "are in the public domain, the submitter is unable to make any claim to confidentiality," and the documents must be disclosed. *CNA Financial*, 830 F.2d at 1154. Defendants acknowledge that Plaintiffs' Exhibits 18 and 24 are identical to two maps withheld pursuant to Exemption 3. (Hall Decl. ¶ 3). Accordingly, under the public domain doctrine, these two documents, identified as Cameron Corners Quadrangle (Pabarcus Decl., Exh. 24) and Multiple Resource Area No. 2 (Almeda Starkey Decl., Exh. 18), must be disclosed

**1194**

and the court denies the motion for summary judgment with respect to these two documents.

While the court orders the production of these two maps, the court finds that Defendants are entitled to summary judgment with respect to related documents. While there clearly appears to be some overlap between the various documents identified in Exhibit S and Plaintiffs' Exhibits 2, 8, 9, 10, 18, and 25, the court finds that Defendants have met their summary judgment burden with respect to the "narrative descriptions of [archaeological resources], descriptions of the objects, and commentary on their condition." (Exhibit S at S–1). In other words, the withheld maps are identical to those already in the public domain, but the descriptions of the objects and comments on their condition are exempt from disclosure under ARPA because these documents are not in the public domain. *See The Army Times Publishing Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1071 (D.C.Cir.1993) (an agency does not waive its right to assert an exemption by releasing information that is only similar to the requested material). While the maps should have been disclosed, the narrative descriptions and comments, as set forth in the *Vaughn* Index need not be disclosed.

To complete the Exemption (b)(3) analysis, the court has reviewed the *Vaughn* Index submitted by Defendants and concludes that the Index adequately describes the documents withheld, the basis for the claimed statutory exemption, and explains how the nondisclosure complies with ARPA's non-disclosure provisions. In sum, the court grants Defendants' motion for summary judgment based upon Exemption (b)(3) as to all documents with the exception of the two above described maps, identified as Cameron Corners Quadrangle (Pabarcus Decl., Exh. 24) and

Multiple Resource Area No. 2 (Almeda Starkey Decl., Exh. 18).

*Exemption (b)(4)*

FOIA disclosure does not extend to "[t]rade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 522(b)(4). To prevail under this exemption, the information must be (1) financial or commercial in nature; (2) obtained from a person outside the government structure; and (3) confidential or privileged. *See National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C.Cir. 1974). *National Parks* also sets forth a two-part test for determining whether commercial or financial information is confidential:

> [C]ommercial or financial information is 'confidential' for purposes of the exemption if disclosure is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*Id.* at 770.

Under this exemption, Defendants are withholding information related to the price per cubic yard for mined material and proposed loan repayment terms, (Exh, S, Item B.1); depth of wells, depth of the water in the ground table, thickness of the decomposed granite aquifer, and well yield, (Exh S, Item B.2); the minimum rent payable to La Posta; (Exh S, Items B.3 and B.4); the amount of royalty payments, including the formula for calculating the payments, (Exh. S, B.3 and B.4); the amount of the performance and reclamation bond, (Exh. S, Item B.3); the amounts of insurance coverage for personal injury and property damage, (Exh. S, Item B.3); a description of the use of equipment for the mining operations,

(Exh. S, Items B.3 and B.4); the fees and costs associated with default, (Exh. S, Items B.3 and B.4); a listing of the equipment proposed to be used for extraction purposes, (Exh. S, Item B.5); an estimate of the amount of dry waste expected from the operation and potential uses for the dry waste, (Exh. S, Item B.5); and maps revealing the opinion of the drafters about the approach to working the site and which show the proposed location of the mining operation, its sequence, and its depth. (Exh. S, Items B.5 and B.6). Plaintiffs do not challenge that Items B.1 and B.3 through B.6 contain commercial or financial information. (Opposition at p.10:16–17). Plaintiffs only challenge Item B.2, relating to well and water information, as non-commercial or financial information. As to all listed Items, Plaintiffs dispute whether information is confidential or privileged.[1]

*Well and Water Information*

■ Plaintiffs challenge the lack of disclosure of well and water related information on grounds that it is not commercial or financial information and would permit the Government to withhold any information regarding any natural resource under FOIA. (Opposition at p.10:18–20). Plaintiffs concede, however, that the well and water information was provided by persons outside the government.

The court concludes that well and water related information is commercial or financial in nature. As set forth in the declaration of Edward Keable, water is a precious, limited resource and is commercial or financial "because it defines the amount of water on the reservation.... Release of the ground water [related information] ... would cause competitive harm to the Band because the tribe does not have an adjudicated water right and the release of the withheld information would adversely af-

fect the Band's ability to negotiate its water rights or to litigate that issue." (Exh. S at 8; Hill Decl. ¶ 10). Accordingly, the court concludes that water and well related information is commercial in nature and satisfies the first prong of the statutory scheme. *See Sporhase v. Nebraska,* 458 U.S. 941, 954, 102 S.Ct. 3456, 73 L.Ed.2d 1254 (1982) (water is an article of commerce).

*Confidentiality of the Information*

■ Plaintiffs argue that the information contained in Items B.1 through B.6, (Exh. S at pp. 6–11), is not confidential because Defendants fail to establish either (1) impairment to the Government's ability to obtain information or (2) that the parties who submitted the information will suffer competitive harm if the information is disclosed. *See National Parks,* 498 F.2d at 766. The Court concludes that Defendants have carried their burden in demonstrating that the disclosure of the information will result in competitive harm to the providers of the information.

As set forth above, the type of documents withheld from disclosure regards information about confidential pricing, water and well resources, and mining operations. The *Vaughn* Index, as well as the declarations submitted by Edward Keable, Harold Hall and R.G. Bellows, establishes that the information is confidential within the meaning of FOIA. R.G. Bellows, bankruptcy counsel for Four Eagle Materials, LLC substantiates the declaration of William Murray, CEO of Four Eagle, that disclosure of the information "would give [ ] competitors unfair advantage in undercutting prices, structuring their transactions, and marketing in the recruitment of customers.... The withheld information is unquestionably information which Four

---

1. Plaintiffs concede that the information was obtained from persons outside the Govern-

ment. Consequently, the second statutory prong of the *National Parks* test is satisfied.

Eagle guards as proprietary and confidential information. Four Eagle has not released this information. To make such information publicly available would be unfair and would put Four Eagle at a competitive disadvantage." (Murray Decl. ¶¶ 7–9).[2] Accordingly, the motion for summary judgment on the exemption 4(b) materials is granted in favor of Defendants.

*Exemption (b)(9)*

■ FOIA disclosure does not extend to "geological and geophysical information and data, including maps, concerning wells." 5 U.S.C. § 522(b)(9). Pursuant to this exemption, the *Vaughn* Index reveals that the Government is withholding portions of a preliminary draft supplemental environmental assessment dated September 2000. The BIA redacted three pages of the 58 page report to exclude information in table and narrative form about ground water inventories, well yield in gallons per minute, and the thickness of the decomposed granite aquifer. (Exh. S at 11). The court concludes that this is the type of well water related information exempted from disclosure under exemption (b)(9). Accordingly, the court grants the Government's motion for summary judgment.

**Documents Filed Under Seal**

The court also orders that the documents filed under seal pursuant to this court's October 25, 2002 order be unsealed. The two documents, identified as Cameron Corners Quadrangle (Pabarcus Decl., Exh. 24) and Multiple Resource Area No. 2 (Starkey Decl., Exh. 18), are, for the reasons set forth above, publicly available and therefore the Government fails to establish that the documents should be placed under seal. Accordingly, the court orders the Clerk of Court to unseal the documents

placed under seal pursuant to the October 25, 2002 order.

In sum, the court grants the Government's motion for summary judgment in its entirety except for the two documents, identified as Cameron Corners Quadrangle (Pabarcus Decl., Exh. 24) and Multiple Resource Area No. 2 (Almeda Starkey Decl., Exh. 18). The Government is instructed to provide Plaintiffs with a copy of these two documents. The court also orders that the documents placed under seal pursuant to this court's October 25, 2002 order be unsealed. The Clerk of Court is further instructed to close the file.

**IT IS SO ORDERED.**

---

**2.** While Eagle has filed for bankruptcy, the bankruptcy trustee abandoned certain property which reverted back to Four Eagle. (Bellows Decl. ¶ 6).